I represent Travis Gibson, a man who spent approximately 18 months in jail or prison on criminal charges which a Missouri judge has determined were not supported by the law or the facts. Mr. Gibson was released from prison based upon his own pro se motion and the court's guilty plea to a felony violation of an order of protection under section 445.085 constituted a manifest injustice based upon his rule 2907D motion. Upon release... Well that wasn't a pro se motion. You're right. He didn't win the pro se motion, he won six months later with the help of counsel and I thought the judge testified that it wasn't, the ruling was not based on Mr. Gibson's reading of the statute, but on flaws in the prosecution that I didn't study the records so I can't tell you what they are. Is that wrong? Well, the plaintiff's motion was never heard, your honor. His motion was filed and then copied. But your whole brief turns on the plain language of the statute which to me is plain not the way you read it. In which you're talking about the 455060? Yeah. You don't agree with my reading of the statute? Well, I don't agree with Mr. Gibson's assertion that just citing that statute to a police officer trying to quell a domestic disturbance would know that the protective order cannot be part of the equation. That's not what the statute says. Well, judge, what the statute says, well, first of all, the protective order that was used to prohibit him from further abuse. That doesn't matter. The only thing the police cared about was what was going on at the time. Well, let's talk about the arrests. On January the 10th, the arrest, he was at a public convenience store in the presence of his wife. That's all he did. There was a report called in saying that he was at the convenience store. And they've relied on that arrest of the 10th as justification for the later arrests. The simple fact of the matter is there was no probable cause for that arrest, your honor. The order of protection had been modified by the- The ex-wife said he refused to leave and he was under an order, right? To stay away from her. No, not at the grocery store. Not at the convenience store. The police officer merely came, saw him there, and arrested him. There was no basis for that arrest. There was no probable cause. The prohibition against communication with his wife had been removed by the entry of the separation decree. Well, that's where I think you're ... That's a great leap. And unless the state trial judge ultimately ruled that, I think that's not- Well, Judge, Section 4, you know, the 445.060- The police officer doesn't have to have this umpteen briefs and everything else. He's got to decide what to do. And if she said there's a protective order with this provision, or I can't remember what inquiry he made on January, that was a relatively minor- Well, but it became the basis of the eventual felony conviction, so it is important, your honor, whether or not they had probable cause on January the 10th, January the 12th, all led up to the April arrest. So what did he do to ... She said he's under ... He's violating a protective order, right? No, she didn't. She never ... Not on January. She never said anything about violation of protection order. So a policeman just walked up and said, you're under arrest, come with me? That's what it appears from the arrest file on January the 10th at the convenience store. Now on the 12th, when he was at the home in the morning, and the police officers came, they were specifically advised of the existence of the separation decree. Both parties told those officers that the matter of child custody had been decided by the circuit court and the parenting plan as part of the separation decree. They were aware of the existence of that order on that morning, and they didn't arrest him. And that was ... In the morning, there had been a phone call about an argument. In the afternoon, it's unclear how they got back to the house, but they came to the house. Two officers came separately. The officer who actually made the arrest said, when I arrived, Mr. Gibson was outside the house. That the other officer came out and said, there's no provision in the protective order for child custody, but didn't say anything about the separation decree where the custody orders were found. And they arrested him, based upon his presence at that address, which again, under 455.060, was not a violation of the protection order, because it was a different address than the one listed in the order. What about the district court's alternative grounds for probable cause for arrest? Disturbing the peace, trespassing statements from the ex-wife or ex-partner regarding that issue? Well, there was no evidence of anything about disturbing the peace on the afternoon of the 12th. They simply showed up there. Disturbing the peace, and this is a question of dispute under Missouri law. When did the daughter report the yelling? I thought that was the 12th. It was on the morning of the 12th, and then again on April the 9th, on the felony arrest. Okay, on the 12th. On the morning of the 12th, not the afternoon of the 12th. And he followed mother home, and he's yelling? No, that's April, Judge. That's a different time. Okay, the question is? Why didn't he just stay away? Why didn't he just comply with the custody visitation provisions, and otherwise stay away? This is the most malicious vengeance exercise I've seen in 20-some years. I'm glad I'm not a state court judge, I guess. Judge, you know, the wife never really complained about anything that Mr. Gibson did. She didn't complain on the 12th. She let him in the house. What is there in the summary judgment record that supports that? The arrest report from the afternoon of January the 12th. Did she testify in the summary judgment? She refused to testify, Your Honor. We went down to take her deposition, and Ms. Gibson, under oath, refused to answer any questions from any parties. She simply said that she wasn't going to get involved in this, and that we would have to do whatever we wanted to do, but that she was not going to testify in the case. She was actually noticed up, I believe, by the defendants in the case. If we could turn to the April 9th arrest. She didn't have a Fifth Amendment right, so what do you mean? The lawyers respected her desire not to be involved? We didn't respect anything, Your Honor. She refused to testify. Was she subpoenaed? She was subpoenaed. We did not issue a body attachment, and then the summary judgment motions intervened. Your Honor, you ask why should a police officer know about all these laws? Well, if they're out there enforcing orders of protection, I would submit that they're required to know how a subsequent decree of dissolution or separation could impact the order of protection. Under section 452.425, which is chapter 452, is child custody. And 455 is the order of protection. But there's interplay between those sections. Under 452... Did the daughter testify? The daughter did not testify. Was she deposed? She was not deposed. Under 452.425, trial courts can put in a parenting plan a provision that law enforcement shall enforce the custody decree. That was in this parenting plan in this case. Under 452.556, the state court administrator is supposed to distribute a pamphlet to every court setting out the regulations regarding parenting plans. If these police officers are going to come into a home and decide which court order they're going to enforce, the order where my client's ordered to be there to pick up his child, where he's ordered to communicate with his wife, where he's ordered to give her materials... Now, what days were those? Well, he was getting... He was there on the 12th to get some materials regarding his son and to drop something off regarding his son for his wife. It wasn't a custody visitation. It was not a custody exchange. But he's not precluded from being in her presence in all situations, Your Honor, because 455.060 took out the communication restriction. It took out being in her presence restriction. It took out the restriction against visiting the home. Those were no longer part of the order of protection. Now, we have a continuum between the Byer versus City of Lewiston case where the court said that the police officers have a duty to investigate the contents and the restrictions in an order of protection and at the other end is the Sestry case, this court's case in the City of Crestwood. Now, you know, you talk about what the statute takes out. None of those things are in there. Well, yes it is. It removes all restrictions... All provisions shall terminate upon entry of dissolution... Except... Except as to those provisions which require the respondent to participate in a court approval counseling program... Which did not exist in this case... Or enjoin respondent from abusing, molesting, stalking or disturbing the peace of the petitioner and which enjoin respondent from entering the premises of the dwelling of the petitioner as described in the order of protection unless the respondent is ordered possession of the dwelling unit. Now, you're saying a police officer should ask to have the same knowledge of how that applies to a particular situation as a fact finder after a full trial? Yeah. If he's going to go into somebody's house and enforce the order, Judge... He must know exactly what that means. He at least has to conduct an investigation into what the context... You have absolutely no case support for that. No. Well, I have... Well, I mean... I have Byer versus Lewiston... Fisher couldn't be more contrary to that position. That's true. But Byer says that if you're going... But we can't overrule Fisher. That is true. So how do you distinguish it? I distinguish it factually because in this case these police officers were specifically advised by both parties that there was, in fact, a decree of legal separation. And once they became aware of that fact and the fact that it might have some effect on the order of protection that they had an obligation to conduct an investigation into, number one, the contents of the separation of decree which nobody ever did. So they have to stop, leave the disturbing parties away and go down to the courthouse and read all these documents. Absent exigent circumstances and there were never exigent circumstances. You know, that's easy for you to say and for courts to say as a matter of hindsight. That's the whole point of Fisher. If you've got complainants saying there's a disturbance or a problem here that needs solving, the police officer doesn't have to leave the scene and go conduct some kind of a law school seminar to figure out what the niceties are. No, but what he can do is when the arrestee, the person who's eventually arrested, is already outside the house or in his own car in a public parking lot to just simply have him leave. And you've solved the problem while you do the investigation. Which date is that? On the 12th and April the 9th. I just want to say a quick word about the prosecutor. You know, we alleged a conspiracy. Excuse me, the public defender. We alleged a conspiracy. And I think we've alleged sufficient facts. We have a case where a lawyer was made aware of the existence. Let's talk about the sheriffs. Yes, your honor. The prosecutor. You want to talk about the sheriffs? What investigation should the sheriffs have done? Did they have an obligation not to leave it to the Department of Commerce to deal with Louisiana? Well, if you believe the statute that the defendant cited... Forget the statute. We're talking about reality. Reality? They should have made a phone call to somebody to see what... Who? Who? You could have called the Department of Corrections. They did. That's what the facts say. Well, I believe... And the Department of Corrections said he's on hold from... There's a hold from Louisiana. And we're checking it out. Now, what did the sheriffs have a constitutional obligation to do? To call Louisiana. They had to do it. I believe so. Instead of leaving it to the Department of Corrections, the people that know how to deal with whoever in Louisiana it is, and who in 24 hours were able to say, Louisiana has released its hold. In my experience, the sheriffs perfectly capable of calling another sheriff's department are the prosecutors. Now, give me the case that establishes this investigation. I don't have a case on that, your honor. Why did you pursue the sheriffs? I mean, this is ridiculous. I'm going to reserve my time. Mr. Bubb. May it please the court. My name is Michael Bubb. I represent appellees Rick Cook, Josh Benton, Jeff Mitchell, the city of Dexter, who I might refer to as the Dexter defendants. I actually have two different parts of the case. Also, Sheriff Carl Hefner and Deputy Tommy Horton. As you know, I sort of represent two separate sets of defendants who are involved at different stages of this case. The Dexter defendants were involved in the arrest of Mr. Gibson based upon violations of the order of protection. And then I represent the Saturn County defendants based upon them holding him after the judge had allowed Mr. Gibson to withdraw his guilty plea. One thing that the court picked up on, and I think it's very important. So you're not the police officer? I have the police officers and I have the sheriffs at the end of the case. So how can the police officers prevail at the summary judgment stage when the wife and the daughter won't provide even an affidavit? Mrs. Gibson, when we took, attempted to take her deposition, made a statement on the record that she had suffered enough at the hands of Mr. Gibson and she wasn't going to go through it again. That's in the record? It's not in the record. Well, don't go outside the summary judgment record. You asked me what she'd said, Your Honor. I'm sorry. No, I said, I did not. I asked you how can your clients prevail at the summary judgment stage when there's nothing in the record from the wife and daughter and the innocent victim parties on whom you, who you analogize to the Walmart employees in Fisher. Well, Your Honor, the, whether or not a crime had been committed is really not the issue on the arrest. It's whether or not the subjective state of mind of the officers, whether or not they had a reasonable belief based upon the information that they had that a crime was being committed. I know the law. That's not my question. It's a fact-intensive question. When, when there's, when the documents, the court orders are not there, at least in January, as I understand the facts, the only basis, therefore, for the arguable probable cause is what the apparent victims are telling the police officers. How can they get summary judgment when the victims won't have, have, when there's nothing from the victims in the record? Because, Your Honor, the inquiry is, is, is the officer. The officers testify. The officers... So, so if the officer says I heard X, Y, and Z and there's nothing else in the record, the officers get summary judgment because the district court has to believe them? Well, Your Honor, again, the inquiry is, is the officer's state of mind. And, and the statements... Not entirely. The statements... It's an objective reasonableness test. Let's get, let's get down to the Fourth Amendment. And, and the statements from the victims are in the documents. They're in the reports. They are documented. There are written statements from the victims as well, especially on the April 9th when there was a, a significant altercation. What, what are the, what are the, are these, these are police reports? Police reports with... And give me the exhibit numbers if you have them. I'll have sites, sites to the, not the exact exhibit numbers, but I'll have sites to the, to the record in the joint appendix. Oh, good. Um... Well, the third... The April 9th is, is 006. Page 6? Right. Of the joint appendix 006. Um... I'm sorry, Your Honor. The, the April is, uh, 226 and 227. 232 and 276. And that's the April 9th. Um... And nothing in January? January. That's joint appendix 271. 219. And 220. And when were these prepared? And by whom? They were prepared by the police officers either on the day or within a day of the incidents themselves. And, Your Honor, what, what you... And were they, were they initialed by the victims or confirmed in any way? I believe the April report had actual written statements from the victims attached to it where they wrote out actual statements, handwritten statements. And, and the point that you made earlier, Your Honor, is that these officers have to make decisions in the field on the basis of the order of protection which is also part of the record. Uh, Miss, Miss Gee stated to the court in her application for the order of protection that she'd been physically abused and assaulted by Mr. Gibson. And the judge... Which police officer knew that and when? That would have been part of the basis of the order of protection. No, no, that's not what I asked. So, well, my point is, Your Honor... My point is they don't have to investigate. The only thing that matters is what did they know or believe they knew. What is there, what is there in the record that says the arresting police officers had all this background prior to the order of protection? Probably nothing. Not prior to the order of protection, no. Well, you just, you just talked about the order of protection was based on claims of abuse. It's in the record, Your Honor. My question is what did the cops know about that? And, and the point that I was making, Your Honor, is... Well, you see, you just jumped to an irrelevancy, didn't you? But when you, when you properly state the whole question is the police officers state of mind, then you start arguing facts that the police officers didn't have a clue about. What the officers did know is that there was an order of protection in place. And they had it? They read it? In January? I don't know if they actually had a copy of it when they arrested. The way it works, Your Honor, is the dispatchers have it in their files and that if there is an alleged report... And there's dispatcher testimony in the record as to what was settled, what the officers were told? The officers testified that they checked with dispatch to make sure the order of protection was still enforced and still effective. That's part of their procedure. They get a call saying there's been a violation and they check with the dispatcher to make sure that it's still enforced. So that's what the officers know is that a judicial determination has been made. Is there dispatcher testimony regarding whether the dispatcher knew about the separation decree and if so, opined as to its effect on the order of protection when he or she talked to the officers? There's no testimony from a dispatcher, Your Honor. No. And there's no testimony from anybody... Well, how do we know that there... Okay, the officers testify what with regard to the separation decree? The separation decree is not something they have access to. The only information they have regarding a separation decree... He told them about it. He testified that he told them about it. Yes. Okay. And he told them that it nullifies, if you will, the protection order, right? He said that. And they denied it. Oh, well, now we got something to try. No. No, Your Honor. And again, there's no mini-trial that can take place here when there's an ongoing domestic disturbance. That's what the police officers are faced with, multiple domestic disturbances that they're reporting. That's the biggest disturbance because the disturbees won't testify. I mean, other than he's here and he won't leave. I assume that's what's in the statements. Well, the one on April, he was actually verbally abusing her, swearing at her, and so forth. And that's in her statement. That doesn't usually get you arrested. When there's an order of protection, it does, because it's part of disturbing the peace. And that's one of the points that Judge Thompson made. Okay, now you're going to have to give me a Missouri case for that one. That just doesn't sound right. Well, when there's an order of protection in place, the officers know that there are certain, from their training, there are certain elements to an order of protection, including not disturbing somebody's peace. That's actually in the order itself. The document says, shall not disturb the peace of the petitioner wherever she may be found. So this whole issue of whether or not it's at her residence. I don't think disturbing the peace encompasses in the legal terms irritating someone. Well, he comes to her premises late at night in the parking lot of her apartment and is verbally abusing her. I think that, and the officers testified, they believed that he was disturbing her peace. The officer testified to that fact. Both the officers who were on that arrest said, in my opinion, he was disturbing her peace and violating the order of protection. It was charged differently by the prosecutor later and that's where I think Judge Thompson's decision came in. He testified that in the absence of the protective order, this conduct would have been disturbing the order of protection. And I think that's the        Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank            you . Thank you. Thank you, Judge Thompson. Thank you. Thank you, Judge Thompson. Thank you. Good morning. May it please the court? Good morning, Ms Crispin. Good morning. I'm here on behalf of Catherine Rice and Roxanne Cook. Catherine Rice was Travis Gibson's public defender, and he alleges that he conspired against her. But Travis Gibson can offer no material evidence that any elements of conspiracy had been met. Roxanne Cook was Travis Gibson's law officer, and he alleges that she did not have probable cause to effectuate his arrest. But in fact, he blatantly told her that he had violated the conditions of his probation and that he intended to continue to violate the conditions of his probation. With regard to conspiracy, the appellant claims that he does not have to show overwhelming evidence of any elements of conspiracy, and he cites the White v. McKinley case. But the White v. McKinley case, although it does say that circumstantial evidence is enough, there has to be some material evidence. In the White case, the defendant had a personal and intimate relationship with another defendant, and she also had stood to profit from the plaintiff's conviction. The appellant cannot make such a showing here. In this particular case, he has to show that there is substantial material evidence that there was a meeting of the minds and that there was an agreement between the defendants. And he has to have some material evidence that there was an understanding to violate his rights. And there isn't anything of that sort here. The only thing that he has is that the prosecutor issued a charge, and that Katherine Rice had not withdrawn the guilty plea, but he doesn't have any evidence to show any meeting of the minds that there was any unlawful act. With respect to Roxanne Cook, the defendant did not have probable cause to effectuate his arrest. At the time in question, there was a felony conviction in place, and Travis Gibson had pled guilty to that felony, and as a result of that, he was under probation, and one of the conditions of probation was that he not contact AG. Now, Roxanne Cook, as his probation and parole officer, has a duty to make sure that Travis Gibson complies with the conditions of probation. Travis Gibson specifically told Roxanne Cook that he had contacted AG in violation of his probation, and that he would continue to contact AG in violation of that probation. The fact that that underlying felony conviction was ultimately set aside doesn't make any difference. And the fact that the underlying felony charge may have been incorrect doesn't make any difference. At the time, he was under the conditions of that probation, and he violated that. I respectfully request that this court find in favor of appellees and uphold the summary judgment ruling of the lower court. Why was it so we had a warrant, and we had an arrest, and we had how much incarceration then before the revocation period? I'm sorry, your honor. I mean, I understand the probation officer has probable cause to be in jail for a revocation inquiry. But she used the warrant power, and then he was arrested, and then I gather he was incarcerated awaiting the revocation hearing. Is that right? Yes, your honor. How long did he stay in jail for telling the probation officer that he didn't like this condition and didn't feel like obeying it?       I'm not sure. I'm not sure. I'm not sure. I'm not sure. I'm not sure. I'm not sure. How many days? I'm sorry, your honor. I don't have that information in front of me. Why did she have to use the warrant and arrest power in order to trigger a revocation or probation violation inquiry? Well, because he told her that he violated the conditions. But wait, I'm talking procedure. Why can't she just file a piece of paper with the court saying he's told me he's going to commit, conduct, engage in an ongoing violation of one of the conditions, and I'd like a hearing where he's set straight about this. Well, that's discretionary, your honor, and she, you know, that is adjusted. Well, what's her explanation for jailing him? Well, her explanation is that he violated the conditions of his probation. She can't jail him for that. For violating the conditions of his probation? She can effectuate his arrest, and she didn't. So there's no restraints on how aggressively you do this process? I don't understand why he had to go to jail. Well, it was her. She just effectuated his arrest. You know, the subsequent, that was not under anything that she did. She effectuated his arrest because he violated the conditions of his probation. I mean, he admitted to doing that. He told her that he did that. She didn't have to do any further investigation. I thought the whole point was he said, yeah, I did it, and I'm going to keep doing it. Yes, he did. Because the condition's improper or illegal or whatever. That's correct. Okay. And he's under the . . . Well, you need to take somebody, you know, in front of the judge on that basis, but I want to know how many days he spent in jail while we But that isn't Roxanne Cooke's. I mean, her job was . . . It's either Cooke or Wellborn, isn't it? But Roxanne Cooke is . . . I represent Roxanne Cooke, and all she did was effectuate the arrest. What happens to him subsequently is not under her purview. And her explanation of why she did an arrest as opposed to simply filing a violation petition with the court? Well, again, that's discretionary, and he did . . . I asked you for her explanation. We're talking summary judgment here. Well, Your Honor, he blatantly told her that he was going to continue to violate the condition. Her explanation for why she felt it necessary to arrest him, is it in the record? I don't believe that that's in the record, Your Honor. So she didn't testify? No. And she didn't put in an affidavit? I don't believe it. Actually, I don't have that information, Your Honor. I'm sorry. Well, how can we determine whether her conduct was objectively reasonable? Because . . . Just because the statute says she has the power? Yes, Your Honor, she does have the discretion, and she does have the right to do that. Statutes give police power to arrest all over the place. It doesn't mean . . . Sometimes they violate the Fourth Amendment when they do it. But it didn't violate the Fourth Amendment in this case. Why? Because he admitted that he did it, that he . . . Wait, wait. That isn't . . . All right. She had probable cause to do this. She did have probable cause to effectuate his arrest. So any violation, no matter how minor, of any condition, of any probation, in your view, allows arresting and indefinite jailing? Well, she does have . . . I'm sorry. Well, that's what you're saying, right? But I don't think . . . It doesn't matter how serious it was. But this is serious. I mean, he told her that he was planning on violating the conditions of his probation. He told her that he would. Well, but . . . He didn't get it. And it's . . . I think this case is something else. Thank you. But I think the record is lousy all around. Your Honor, with regard to the . . . He was in jail for about 90 days from the date of his arrest until the probation revocation hearing. I think what you need to understand about what he told . . . And what effort was made to get him released? None. By anyone. Sounds like . . . Well, was he represented by counsel? Yes, he was. He was represented by the defendant, Catherine Rice, at the time, the person who never bothered to read 455.060 at any time in her representation of her client. That didn't have anything to do with this. And the reason he told Roxanne Cooke that he was going to continue to contact his wife, his ex, was because he was under a court order to continue to communicate with her and to exchange the child. And he also told Roxanne Cooke that, specifically about section 455.060 and the fact that he was an innocent man. What's in . . . Was it developed as to what the content of the conversations were? Did he say, hey, the reason I called her was because I'm trying to drop off our child? No, but what is in her revocation report is that he continues to say delusional things, like I didn't violate the order of protection and I'm innocent. And that was her main reason, as stated in her own revocation report, for ordering the arrest, because he was delusional about something that, in fact, he was accurate, he was right about in the end. With regard to April, I just wanted to say that . . . Well, my time is up, but just so the court is clear, the violation of an order of protection under 445.085.8 does not include disturbing the peace of the petitioner. That is not an element of the crime. So they can't say they relied on that in making the arrest when it's not a criminal charge. If you read section 445.080, disturbing the peace of the petitioner in an order of protection is not an element of the crime of violating an order of protection. It doesn't constitute a crime, and they never had evidence of general peace disturbance. I don't understand what that relates to. Because the statute says that it's a crime to abuse, it's a crime to threaten, it's a crime to molest. It might be a crime to be in their presence, if that's barred. Are we talking probable cause now, or are we talking about why the felony conviction was wrong? Probable cause for the arrest to begin with. You're saying disturbing the peace . . . Of that particular person is not a crime. And that's what they've relied on. The decree of separation gave him carte blanche to disturb her peace in any way at any time. No, it did not give him that. But it's not an element of . . . I don't understand what you're saying then. They had no probable cause to believe they committed any crime at that time. Except they testified they believed he was disturbing her peace, right? Which isn't a crime. Just . . . Well . . . Very interesting case.